# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

JERRY WASHINGTON, etc., et al.,

    Plaintiffs,

v.                                                                            CASE NO. 4:09cv189-RH/WCS

JAMES DEBEAUGRINE, in his official
capacity as Director, Florida Agency for
Persons with Disabilities, and
HOLLY BENSON, in her official
capacity as Secretary, Florida Agency
for Health Care Administration,

    Defendants.

_____/

**ORDER GRANTING A PRELIMINARY INJUNCTION,
DENYING THE MOTION TO DISMISS THE CLAIMS AGAINST
THE DEFENDANT DEBEAUGRINE, AND DISMISSING
THE CLAIMS AGAINST THE DEFENDANT BENSON**

This case presents this issue: when a state official erroneously denies a medicaid beneficiary his or her federal constitutional, statutory, and regulatory right to a hearing before the termination or reduction of benefits, must the beneficiary seek relief only in a state court, or may the beneficiary instead seek relief in a federal district court. The answer is that the beneficiary may enforce this

federal right in a federal district court.

# I

The State of Florida Agency for Persons with Disabilities ("the Agency") operates a medicaid "waiver" program under which individuals with developmental disabilities receive services in the community rather than in institutions. Each beneficiary is entitled to a lay representative who assists the beneficiary in dealing with the Agency and service providers. The lay representative is an independent contractor paid by the Agency but chosen by the beneficiary from a list of qualified individuals.

In 2007 the Florida Legislature dramatically changed the waiver program, establishing four "tiers" and setting expenditure caps for three of the four. This case presents no challenge to the validity of the Legislature's action.

As required by the Legislature, the Agency set about assigning the waiver-program beneficiaries to the tiers. It was an enormous undertaking. The Agency went to commendable lengths to try to make each decision correctly. And the Agency recognized that a beneficiary who raised a factual dispute about his or her proper placement in a tier and a resulting termination or reduction of previously approved benefits was entitled to a hearing. The Agency advised the affected beneficiaries and their representatives of this right, granted hundreds of hearing requests, and made available to those whose requests were granted the more-than-

adequate procedures established by the Florida Administrative Procedure Act.  But the Agency also rejected hearing requests that, according to the Agency, did not adequately allege a factual dispute.  Under Florida law, a beneficiary whose hearing request was denied could appeal to the appropriate Florida appellate court.  More than 100 did.

The six plaintiffs in this lawsuit are waiver-program beneficiaries.  For each of the six, the Agency's tier assignment will result in a reduction of benefits.  Each beneficiary submitted a written request for a hearing.  The Agency denied the request, concluding that the beneficiary had not adequately identified a factual dispute over the proper tier assignment.  But each beneficiary *did* assert unmistakably in the written hearing request that the tier assignment was erroneous.

A beneficiary's failure to identify a factual dispute with specificity was understandable, because the Agency had not explained the factual basis of the underlying tier assignment with specificity.  But each hearing request, when reasonably construed in context, plainly indicated that the beneficiary disputed the factual basis of the tier assignment.

Each of these six beneficiaries chose not to appeal within the state system.  Instead, they filed this federal lawsuit, naming as defendants the Agency's Director, James DeBeaugrine, and the Secretary of another state agency—the Agency for Health Care Administration ("AHCA")—Holly Benson.

The plaintiffs have moved for a preliminary injunction barring the defendants from terminating or reducing their benefits in relevant respects without a hearing. The defendants oppose the motion for a preliminary injunction and have moved to dismiss the complaint on the merits. Secretary Benson's motion to dismiss asserts, in addition, that AHCA is not responsible for administering the waiver program.

## II

The statute establishing the four tiers provides:

> (a) Tier one shall be limited to clients who have service needs that cannot be met in tier two, three, or four for intensive medical or adaptive needs and that are essential for avoiding institutionalization, or who possess behavioral problems that are exceptional in intensity, duration, or frequency and present a substantial risk of harm to themselves or others.
>
> (b) Tier two shall be limited to clients whose service needs include a licensed residential facility and who are authorized to receive a moderate level of support for standard residential habilitation services or a minimal level of support for behavior focus residential habilitation services or clients in supported living who receive greater than 6 hours a day of in-home support services. Total annual expenditures under tier two may not exceed $55,000 per client each year.
>
> (c) Tier three shall include, but is not limited to, clients requiring residential placements, clients in independent or supported living situations, and clients who live in their family home. Total annual expenditures under tier three may not exceed $35,000 per client each year.
>
> (d) Tier four is the family and supported living waiver. Tier

>four shall include, but is not limited to, clients in independent or supported living situations and clients who live in their family home. An increase to the number of services available to clients in this tier shall not take effect prior to July 1, 2009. Total annual expenditures under tier four may not exceed $14,792 per client each year.

Fla. Stat. § 393.0661(3)[1]

The Agency's rules implementing the statute have been held invalid, *see Moreland v. Agency for Persons with Disabilities*, No. 1D08-4353, 2009 WL 2602298 (Fla. 1st DCA Aug. 21, 2009), but the Agency is continuing to administer the statute, which remains in effect.

Both sides have agreed that *Moreland* does not affect the six plaintiffs in this case or render their claims moot.

### III

Both sides also have agreed that a waiver-program beneficiary who disputes the factual basis for a termination or reduction of benefits is entitled to a hearing before the termination or reduction takes effect. The right has a constitutional basis, *see Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970), and is confirmed by the governing federal statute and regulation. Under 42 U.S.C. § 1396a(a)(3), a state agency must provide "an opportunity for a fair hearing" to a beneficiary whose claim "is denied or is not acted upon with

---

[1] Citations in this order to the Florida Statutes are to the officially compiled 2008 version.

reasonable promptness." Under 42 C.F.R. § 431.220, a state agency must "grant an opportunity for a hearing to . . . [a]ny recipient who requests it because he or she believes the agency has taken an action erroneously." An "action," within the meaning of the regulation, is "a termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 431.201. A wavier-program beneficiary may also have a right to a hearing under Florida law. *See* Fla. Stat. §§ 120.569 & 120.57.

IV

Both sides have agreed further that there is no right to a hearing when there is no factual issue attending a denial or reduction of benefits—that is, when there is no factual issue to be heard. The governing regulation confirms this, saying that the agency "need not grant a hearing if the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all recipients." 42 C.F.R. § 431.220(b). Thus, for example, when a state validly changes its law in a way that, without factual dispute, ends a person's benefits, no hearing is required. *See, e.g.*, *Rosen v. Goetz*, 410 F.3d 919, 926 (6th Cir. 2005). The right to a hearing when the recipient believes the agency has acted "erroneously" thus means "factually erroneously." *See id.*; *Soskin v. Reinertson*, 353 F.3d 1242, 1263 (10th Cir. 2004) (holding that a hearing is required under § 431.220 when a claimant asserts that the state agency misapplied the law to the facts of his or her case); *see*

also *Ladd v. Thomas*, 14 F. Supp. 2d 222, 226 (D. Conn. 1998); *Parry v. Crawford*, 990 F. Supp. 1250, 1258-59 (D. Nev. 1998); *Perry v. Chen*, 985 F. Supp. 1197, 1203 (D. Ariz. 1996).

V

The plaintiffs say they were wrongly denied a hearing. The Agency contests the assertion, saying the hearing requests were inadequate. But the Agency does not seem to deny that there *is* a factual dispute over the plaintiffs' proper tier assignments. Each plaintiff's hearing request plainly so indicated, at least when read with any degree of charity or understanding. The Agency says, though, that with changes affecting this many beneficiaries, resulting in this many hearing requests, some small number of mistakes was inevitable.

Perhaps so. But the question is not whether the Agency attempted to implement the new statute in good faith, performed well, and cut mistakes to a minimum. The question is what must be done with the mistakes that were made, however few in number.

The Agency says the mistakes must be corrected by appeal to the appropriate Florida appellate court. Florida law makes such an appeal available, at least on the issue of whether, as a matter of Florida law, the Agency should have provided a hearing under the Florida Administrative Procedure Act. *See* Fla. Stat. § 120.68. For present purposes I assume without deciding that such an appeal could properly

encompass the analytically distinct question of whether a hearing was required by federal law.

The distinction is significant. It is significant because of differences both in what it takes to invoke the right to a hearing and in the nature of the required hearing. Under Florida law, a person is entitled to a hearing on a state agency's proposed decision affecting the person's substantial interests only if the person files a petition that adequately alleges a factual dispute; indeed, the governing rule requires the petition to identify the applicable rules or statutes and to explain how those rules or statutes entitle the petitioner to relief in light of the factual allegations. *See* Fla. Stat. § 120.57(1) (providing for a hearing only when there is a disputed issue of material fact); Fla. Admin. Code. Ann. r. 28-106.201(2)(e)-(f) (setting out pleading requirements); *Blackwood v. AHCA*, 869 So. 2d 656 (4th DCA 2004) (upholding the denial of a hearing for failure to adequately allege a disputed issue of material fact). When these requirements are met, the person is entitled to a hearing with the full range of procedural rights available under the Administrative Procedure Act. *See* Fla. Stat. § 120.57(1)(b)–(n).

Under federal law, a hearing need not be as extensive. *See* 42 C.F.R. §§ 431.205, 431.240 & 431.242; *see also Goldberg*, 397 U.S. at 267-68. And of great importance here, the pleading requirement is lower. A beneficiary need not file a formal pleading setting forth with unmistakable clarity the factual basis of his

or her claim. Instead, the beneficiary need only request a hearing and assert that the Agency's action was factually erroneous. *See* 42 C.F.R. § 431.220; *Goldberg*, 397 U.S. at 268 & n.15.

It is true, as the defendants note, that neither the statute nor the regulations explicitly prohibit a state agency from requiring a more precise pleading as a prerequisite to a hearing. And imposing some minimal pleading requirement as a means of avoiding hearings when there is no factual dispute seems altogether appropriate. But the threshold for invoking the hearing right under federal law must be low. Indeed, 42 C.F.R. § 431.221(b) broadly states that an agency "may not limit or interfere with the applicant's or recipient's freedom to make a request for a hearing." Requiring greater precision than reflected in these plaintiffs' hearing requests would be inconsistent not only with the governing statutes and regulations but also with the constitutional underpinnings of the right to a hearing. What the Court said in *Goldberg* about welfare recipients is at least as true—indeed, probably more true—about developmentally disabled medicaid beneficiaries:

> The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard. It is not enough that a welfare recipient may present his position to the decision maker in writing or second-hand through his caseworker. Written submissions are an unrealistic option for most recipients, who lack the educational attainment necessary to write effectively and who cannot obtain professional assistance. Moreover, written submissions do not afford

> the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important. . . . Therefore a recipient must be allowed to state his position orally. Informal procedures will suffice; in this context due process does not require a particular order of proof or mode of offering evidence.

*Goldberg*, 397 U.S. at 269 (footnote omitted).

A central reason for the federal right to a hearing is the difficulty that a beneficiary or even a lay representative often faces in attempting to articulate the basis for a claim. A hearing sometimes can avoid an erroneous reduction of benefits far more effectively than the elaborate procedures available in a court or in a formal proceeding under the Administrative Procedure Act. Imposing a procedural bar to such a hearing—a formal pleading requirement that a disabled person or lay representative may be poorly equipped to meet—is the very antithesis of the right to a hearing.

So a beneficiary who fails to adequately plead a claim under the Florida Administrative Procedure Act does not necessarily fail to adequately invoke the right to a hearing under federal law. The beneficiary may challenge the Agency's denial of a hearing under Florida law by appeal to the Florida appellate court. And even if the beneficiary may also challenge the denial of a hearing under federal law by appeal to the Florida appellate court, this does not mean the beneficiary must do so. Settled law entitles the beneficiary to enforce the federal hearing right in a

federal district court without first exhausting the available state judicial remedies.

The statute providing a federal remedy is 42 U.S.C. § 1983. It allows a claim against a person who deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. The rights secured by the laws of the United States include those provided in the statute and regulations at issue here. *See, e.g.*, *Maine v. Thiboutot*, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) (holding that § 1983 encompasses a claim based on federal statutory violations and applying the holding to a claim for welfare benefits under the Social Security Act); *Harris v. James*, 127 F.3d 993, 1009 (11th Cir. 1997) (indicating that a regulation that merely defines the contours of a statutory right may serve as the basis for a § 1983 claim).

The Supreme Court has given § 1983 a wide berth: "It is abundantly clear that one reason the legislation was passed was to afford *a federal right in federal courts*" because for various reasons—including prejudice, neglect, intolerance, or "otherwise"—federal rights "might be denied by the state agencies." *Monroe v. Pape*, 365 U.S. 167, 180, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961) (emphasis added), *overruled on other grounds by Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 663, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *Monroe* continued:

> It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and *the latter need not be first sought and refused before the federal one is*

>    *invoked*.

365 U.S. at 183 (emphasis added).  The language applies to the case at bar with unmistakable clarity.

The *Monroe* principle has remained inviolate since that time: state judicial remedies need not be exhausted before a claim is pursued in federal court under § 1983.  Indeed, more recent cases have recognized that even state administrative remedies ordinarily need not be exhausted as a prerequisite to a § 1983 claim.  *See Patsy v. Board of Regents*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982); *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1226-27 (11th Cir. 2006).

That the right at issue derives from procedural due process does not change the result.  It is true, of course, that a beneficiary is entitled to a hearing only if he or she requests one.  This does not mean, though, that the state can require the beneficiary to direct a request not only to the agency but also to an appellate court.  A beneficiary is deprived of the federal right to a hearing at the moment when the agency finally denies a hearing request that is adequate under federal law.  The beneficiary may choose at that point to invoke his or her "federal right in federal court."  *Monroe*, 365 U.S. at 180.  The beneficiary need not take the claim to the state courts.

VI

The defendants say the court should abstain from adjudicating the plaintiffs' claims. The assertion is at odds with *Monroe*'s recognition that § 1983 created a federal right enforceable in a federal court. And the assertion is at odds with the settled law of abstention. The federal district courts have the "virtually unflagging obligation . . . to exercise the jurisdiction given them," subject only to narrow exceptions. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

*Colorado River* recognizes that deference to ongoing state judicial proceedings may sometimes be appropriate. *Id.* at 817-18. But these plaintiffs are not parties to ongoing state judicial proceedings. Other affected beneficiaries have instituted appeals in the state system, but those appeals may or may not raise the federal issues that the plaintiffs have raised here. More importantly, there is no basis for a federal court to defer to a state court's forthcoming adjudication of federal issues of this type.

The need for a federal constitutional decision could not be avoided by an authoritative interpretation of state law. *See R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 2d 971 (1941). Requiring the state to conduct a hearing will not interfere with an ongoing state criminal or enforcement proceeding, *see, e.g.*, *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d

669 (1971), and will not interfere with a complex state regulatory scheme, *see Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943). The inapplicability of *Burford* abstention in circumstances like these was recognized in *Haymons v. Williams*, 795 F. Supp. 1511, 1517-18 (M.D. Fla. 1992).

In short, this is a straightforward procedural due process case. Federal adjudication of the plaintiffs' claims is no more problematic here than in *Goldberg* itself and dozens, probably hundreds, of other procedural due process cases that have been adjudicated in federal courts at all levels.

VII

The conclusion that the plaintiffs were wrongly denied a hearing and can seek redress in federal court establishes that the motions to dismiss the claim on the merits must be denied. The same is not true, however, of AHCA Secretary Benson's motion to dismiss on the ground that AHCA has no role in administering the waiver program. The assertion apparently is correct. Director DeBeaugrine apparently acknowledges that full relief can be granted against him without the need for any involvement of Secretary Benson. Her motion to dismiss will be granted.

VIII

The plaintiffs' motion for a preliminary injunction is governed by a well established four-factor test. The plaintiffs must establish a substantial likelihood of

success on the merits, that they will suffer irreparable injury unless the injunction issues, that the threatened injury outweighs whatever damage the proposed injunction may cause the defendants, and that the injunction would not be adverse to the public interest. *See, e.g.*, *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983).

The conclusion that the plaintiffs were wrongly denied a hearing establishes that they are likely to succeed on the merits. The other three factors also support issuance of a preliminary injunction. Withholding benefits essential to a disabled person's ability to remain in the community rather than in an institution rather obviously would constitute irreparable harm. Conducting hearings for each of the plaintiffs will be burdensome, but the burden will not be sufficient to outweigh the threatened harm to the plaintiffs from an erroneous denial of benefits. And requiring the Agency to conduct hearings will not be adverse to the public interest. A preliminary injunction will be issued.

IX

Federal Rule of Civil Procedure 65(c) says that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Although the rule's language is mandatory, the

Eleventh Circuit has said that a district court has discretion to waive the security requirement in appropriate cases. *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission*, 425 F.3d 964, 971 (11th Cir. 2005) (citing *City of Atlanta v. Metro Atlanta Rapid Transit Auth.*, 636 F. 2d 1084, 1094 (5th Cir. Unit B 1981)).

Moreover, several circuits have approved of dispensing with security for indigent plaintiffs who are otherwise entitled to a preliminary injunction. *See Pharmaceutical Soc., Inc. v. Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995) (waiving the security requirement for indigent plaintiffs suing under comprehensive federal health and welfare statutes to vindicate the public interest); *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991) (upholding a waiver of the security requirement in a medicaid case); *Crowley v. Local No. 82*, 679 F.2d 978, 999-1001 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526, 104 S. Ct. 2557, 81 L. Ed. 2d 457 (1984); *Wayne Chemical, Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 701 (7th Cir. 1977) (upholding waiver of security requirement for indigent plaintiff).

The plaintiffs in this case are apparently indigent and unable to give security. If the Director asserts that the plaintiffs should be required to give security, he may file a motion to require the plaintiffs to give security. The motion should suggest an amount the Director asserts is appropriate. If the Director fails to file a motion, he will be deemed to have consented to the waiver of the security requirement.

*Case No: 4:09cv189-RH/WCS*

The Director may file a motion at any time prior to the entry of a final judgment.

X

For these reasons,

IT IS ORDERED:

1. The plaintiffs' motion for a preliminary injunction (document 2) is GRANTED. The defendant James DeBeaugrine must not terminate or reduce a plaintiff's benefits in respects at issue in this case prior to affording the plaintiff a hearing meeting the requirements of this order. The plaintiff must be allowed to appear at the hearing in person and through a lay representative and through an attorney if the plaintiff has one, but Mr. DeBeaugrine need not provide the plaintiff an attorney. At the hearing, the Agency for Persons with Disabilities must explain the basis for the proposed termination or reduction of benefits and must make available any documentary evidence on which the proposed action is based. At the hearing, the Agency must present a witness in person and make the witness available for cross-examination, but the Agency must do so only if it relies on the witness's testimony and believes the witness's credibility will be subject to reasonable dispute in material respects. At the hearing, the plaintiff must be allowed to explain the basis for, and to present materials and witnesses in support of, the contention that the proposed termination or reduction of benefits would be erroneous. A decision to go forward with the termination or reduction of benefits

may be made only by a person who did not make the original decision to propose the termination or reduction and may be made only on the basis of the evidence and materials submitted at the hearing.

    2.  The defendant James DeBeaugrine's motion to dismiss (document 26) is DENIED.

    3.  The defendant Holly Benson's motion to dismiss (document 29) is GRANTED.  I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

    SO ORDERED on October 1, 2009.

                                          s/Robert L. Hinkle
                                          United States District Judge